**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 20-cr-322-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ORLANDO VASQUEZ,

     Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

---

     The Government charges Defendant Orlando Vasquez with one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)

     Before the Court is Defendant's Motion to Suppress ("Motion"), filed September 7, 2021.  (ECF No. 23.)  The Government responded on September 17, 2021 (ECF No. 25), and Defendant replied on October 12, 2021 (ECF No. 28).  For the reasons set forth herein, the Motion is denied.

## I. BACKGROUND[1]

     On May 23, 2020, Greeley Police Department ("GPD") Detective John Dietrick and Officer Collin Losasso were on patrol in an unmarked police car when they

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  This factual summary is taken from the parties' briefs and supporting exhibits.

observed a light-colored vehicle with a temporary tag pull into a McDonald's drive-thru and thereafter pull into a Taco Bell parking lot.  (ECF No. 23 at 1; ECF No. 25 at 1–2.) After surveilling the vehicle, the GPD officers observed both that the car's temporary tag had expired in April 2020 and that the vehicle made a right turn from 8th Avenue onto 22nd Street without first coming to a full stop.  (ECF No. 23 at 1–2; ECF No. 25 at 2.)

Detective Dietrick turned on his emergency lights to initiate a traffic stop of the vehicle; however, rather than immediately pulling over, the vehicle made a left turn onto 7th Avenue, drove passed approximately six houses, and then turned right into a shared driveway between 2110 and 2112 7th Avenue.  (ECF No. 23 at 2; ECF No. 25 at 2.) The vehicle pulled into the driveway, several feet beyond the sidewalk, and next to the front yard.  (ECF No. 23 at 2.)

2110 7th Avenue is a two-story, single-family ranch-style home that is set back from the sidewalk by a front yard covered with grass.  (ECF No. 23 at 2.)  A paved, double-wide driveway that is shared between the occupants of the homes at 2110 7th Avenue and 2112 7th Avenue runs from the street and along the entire right side of the house and backyard to the alley.  (*Id.*)

Detective Dietrick approached the driver's window of the vehicle and Officer Losasso approached the passenger's side.  (ECF No. 23 at 2; ECF No. 25 at 3.)  After conversing with driver of the vehicle—who later identified himself as Defendant— Detective Dietrick ordered Defendant to exit the vehicle to be patted down for weapons. (ECF No. 23 at 3; ECF No. 25 at 3.)  According to Detective Dietrick's police report, Defendant shook his head back and forth in a "no" motion; the officers then grabbed Defendant's arm and forced him to exit the vehicle.  (ECF No. 23 at 3; ECF No. 25 at 3.)

Detective Dietrick's report states that Defendant began to physically resist, and the officers took Defendant to the ground in the front yard of 2110 7th Avenue.  (ECF No. 23 at 3–4; ECF No. 25 at 3.)  After the officers handcuffed Defendant, Defendant admitted that he had a gun in his waistband, which the officers located.  (*Id.*)

## II. BURDEN OF PROOF

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The constitutional protection of people in their houses extends to the "curtilage" of the home, which is "the area 'immediately surrounding and associated with the home.'"  *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).  "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred," which is presumptively unreasonable absent a warrant.  *Id.*

However, "[t]he Amendment says nothing about suppressing evidence obtained in violation of this command.  That rule—the exclusionary rule—is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty."  *Davis v. United States*, 564 U.S. 229, 236 (2011) (internal citations and quotation marks omitted).  Under the exclusionary rule, a defendant may move for suppression of evidence obtained in violation of the Fourth Amendment.  *Id.*

On a motion to suppress evidence derived from a warrantless search and/or seizure, the defendant bears the burden of presenting a *prima facie* case that the Fourth Amendment has been "implicated," at which point the burden shifts to the Government to prove "that its warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or

under some other exception to the warrant requirement)." *United States v. Carhee*, 27 F.3d 1493, 1496, nn.1–2 (10th Cir. 1994).

### III. ANALYSIS

Defendant argues that the Court should suppress "all evidence derived from the unlawful seizure and search of [Defendant], including the firearm and ammunition underlying the sole count of the [I]ndictment," because Detective Dietrick intruded on the curtilage of Defendant's home without a warrant.[2]  (ECF No. 23 at 1, 5.)  He argues that the driveway, which is an area "exclusively reserved for Defendant to park his car every day," is comparable to other areas surrounding the home that courts have deemed curtilage protected by the Fourth Amendment.  (*Id.* at 6.)

In *United States v. Dunn*, the Supreme Court recognized that "the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."  480 U.S. 294, 300 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)).  The central component of this inquiry is whether the area harbors the "intimate activity associated with the sanctity of a man's home and the privacies of life."  *Id.* (internal quotation marks omitted).

In determining whether an area falls within the curtilage of a house, the Supreme Court has enumerated four factors that courts should consider: (1) the proximity of the

---

[2] The Court notes that Defendant does not challenge whether the traffic stop was supported by probable cause or the manner in which Defendant was removed from his vehicle, detained, and searched.  (*See generally* ECF No. 23.)  As such, the Court will not analyze these points.  *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived."); *see also Meyer v.*

area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by.  *Id.* at 301.  These factors are not to be mechanically applied; rather, "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  *Id.*

Defendant argues that the totality of the *Dunn* factors weigh in favor of determining that Defendant's driveway was within the curtilage of his home.  (ECF No. 23 at 7.)  Among other things, Defendant emphasizes out that the area is "in very close proximity to the home itself," "was just a few steps from the front porch, the side of the house, and the front window," and that the area of the driveway where Defendant parked was used exclusively by the residents of the home to park their cars on a daily basis.  (*Id.* at 7–8.)  While Defendant concedes that the area was not enclosed, he argues that the second and fourth *Dunn* factors are not relevant or dispositive because there was no enclosure around the house at all.  Therefore, according to Defendant, the "area was neither inside nor outside the innermost fence" and that, at any rate, "there are few, if any, ways to protect the front of the house from observation of people passing by."  (*Id.* at 8–9.)

In response, the Government recognizes that the driveway is in close proximity to

---

*Bd. of Cnty. Comm'rs of Harper Cnty., Okla.*, 482 F.3d 1232, 1242 (10th Cir. 2007) ("[W]e are not charged with making the parties' arguments for them.").

Defendant's house, but it nonetheless argues that the driveway is not curtilage.  (ECF No. 25 at 7–8.)  The Court agrees with the Government.

In *Collins*, the Supreme Court concluded that an area at the top of a driveway adjacent to the home was curtilage where the area was located "behind the front perimeter of the house," was "enclosed on two sides by a brick wall about the height of a car and on the third side by the house," had direct access to the house itself through a door in the side of the house that formed part of the enclosure, and was not part of the path that a visitor would take from the street to the front door of the house.  138 S. Ct. at 1670–71.

Since *Collins* was decided, however, numerous circuit courts have concluded that a shared driveway is not curtilage based on the specific facts of those cases.  For example, in *United States v. Stephen*, the Eleventh Circuit determined that a driveway attached to a defendant's one-story duplex house was not curtilage, reasoning:

> The driveway was not gated, covered, enclosed, or partly enclosed.  It did not appear that any portion of the driveway was used as a porch or patio or otherwise served as an extension of Stephen's home—to the contrary, the driveway appeared to be a common area used by the residents of both units solely for parking cars.  And the occupants of the home had made no effort to conceal the driveway from passersby.  Furthermore, the driveway formed part of the path that visitors would naturally take to walk to the front door—a pathway led from the upper end of the driveway to the front porch.  In short, nothing in the record indicates that the deputies entered an area harboring the "intimate activity associated with the sanctity of a man's home and the privacies of life" when they approached Stephen in his driveway.

823 F. App'x 751, 755 (11th Cir. 2020).

The Sixth and Second Circuits have similarly concluded that shared driveways

were not curtilage.  *See, e.g.*, *United States v. Coleman*, 923 F.3d 450, 455–57 (6th Cir.

2019), *cert. denied,* 140 S. Ct. 580 (2019) (concluding that driveway, which was sitting

in front of the residence and was not enclosed by anything, and by which other

residents of condominium complex frequently walked past, was not within curtilage of

suspect's home); *United States v. Jones*, 893 F.3d 66, 72 (2d Cir. 2018) ("[*Collins*] has

no effect on [the defendant's] appeal, which fails because the driveway in which [the

defendant's] vehicle was parked was the *shared* driveway of tenants in two multi-family

buildings and was not within the curtilage of [his] private home." (emphasis in original));

*United States v. May-Shaw*, 955 F.3d 563, 571 (6th Cir. 2020), *cert. denied,* 141 S. Ct.

2763 (2021) (concluding carport is not part of curtilage of defendant's apartment

because there is no evidence that defendant had any legal right to exclude others from

the carport); *see also United States v. Guillette*, 2021 WL 1589290, at *6 (D. Vt. Apr. 23,

2021) (concluding vehicle was not within curtilage of defendant's residence where the

vehicle was parked in an unassigned spot in a shared parking lot for a multi-unit building

that was accessible to other tenants and their guests).

  Here, while the driveway is close in proximity to Defendant's home and is

undoubtedly put to use by the occupants of Defendant's home, photographs of the area

demonstrate that the driveway was not within an enclosure surrounding the home and

Defendant had not taken steps to protect the area from observation by passersby.  *See*

*Rieck v. Jensen*, 651 F.3d 1188, 1193–94 (10th Cir. 2011) (concluding in a pre-*Collins*

decision that driveway was not within the curtilage of defendant's home where driveway

was clearly visible from a public highway, and nothing shielded the area from public

view); *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003).  Unlike in *Collins*,

the driveway at issue in this case is neither fenced, gated, covered, nor otherwise enclosed.  (ECF No. 25 at 5.)  Moreover, Defendant's vehicle was not hidden from view, unlike the searched motorcycle in *Collins*, which was "covered with a white tarp." *Collins*, 138 S. Ct. at 1668 (noting that the officer had to remove the tarp to investigate the motorcycle).

Moreover, Defendant's driveway is *shared* by the occupants of 2110 and 2112 7th Avenue, which weighs heavily against any conclusion that Defendant's driveway "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life."  *Cf. Coleman*, 923 F.3d 450; *Jones*, 893 F.3d at 72.

After carefully considering the parties' arguments, the Court cannot conclude on the facts of this case that Defendant's driveway is part of the curtilage of his home such that it "should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301.  Accordingly, because the GPD officers did not enter the curtilage of Defendant's home when they confronted him in his driveway, they did not need a warrant to enter the driveway.[3]  The Court therefore denies the Motion.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1.    Defendant's Motion to Suppress (ECF No. 23) is DENIED; and

2.    The Court will enter a separate Order resetting the trial date and the Final Trial Preparation Conference.

---

[3] Because the Court concludes that the driveway at issue in this case is not curtilage protected by the Fourth Amendment, the Court need not address the Government's arguments that an exception to the warrant requirement and/or the exclusionary rule applies.  (ECF No. 25 at 9–14.)

Dated this 2nd day of December, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge